UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:17-cr-10012 |
| CHARLES BRANDON MCMAHAN, | ) ) ) |
| Defendant. | ) |

## ORDER & OPINION

This matter is before the Court on Defendant Charles McMahan's *pro se* request for compassionate release from a halfway house (dkt. 30) (docketed as "Motion to Modify Conditions of Release") and his counseled Amended Motion for Compassionate Release (dkt. 32). The Government has responded (dkt. 33) and Probation has filed a recommendation (dkt. 31) at the Court's direction. This matter is ripe for review. For the following reasons, the Motion is denied.

### BACKGROUND

In 2008, Defendant pleaded guilty to possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count I) and possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) (Count II). *United States v. McMahan*, No. 07-00581, Dkt. 37 (S.D. Iowa July 17, 2008). He was sentenced to 120 months' imprisonment (60 months' on each count, to be served consecutively), to be followed by 5 years of supervised release. *Id.*

On March 3, 2017, following Defendant's release from prison, jurisdiction was transferred to this Court. (Dkt. 1, 2). Three months later, a Petition for Warrant or Summons for Offender Under Supervision was filed reporting Defendant possessed and used marijuana, committed Disorderly Conduct by threatening to kill his ex-girlfriend and her children, and tampered with a drug test by dilution on five occasions. (Dkt. 5). In August 2017, the Court added conditions of supervised release requiring Defendant to serve two months in home confinement and complete a cognitive-based therapy program. (Dkt. 14).

Six months later, a Petition and Supplemental Petition for Warrant or Summons for Offender Under Supervision were filed reporting, *inter alia*, that Defendant failed to submit to drug tests on two occasions and a search of his residence revealed 3 grams of heroin, 2 Xanax pills, 3 digital scales (one of which tested positive for cocaine residue), plastic baggie tear offs (one of which contained cocaine residue), and Dormin, a substance commonly used as a "cutting" agent to dilute controlled substances to increase sales. (Dkt. 16, 19). On July 30, 2018, Defendant's term of supervised release was revoked. (Dkt. 26).

Defendant was then incarcerated until April 14, 2020, when he commenced his current term of supervised release. (Dkt. 31 at 2). During this supervised release, Defendant used marijuana, received a citation for Driving While License Revoked, and was arrested for Domestic Battery. (Dkt. 28 at 2). Defendant's Probation Officer thereafter recommended he be required to reside, for 120 days, at a community confinement facility designated by the Bureau of Prisons, in order to be "held

accountable for his actions and provide[d] with more structured time." (Dkt. 28 at 2–3). Defendant agreed to this plan, as reflected in the Request for Modifying the Conditions or Term of Supervision with Consent of the Offender filed on September 10, 2020. (Dkt. 28-1). On September 23, 2020, Defendant commenced his 120-day term of community confinement at the Human Service Center Residential Reentry Center (RRC) in Peoria.  (Dkt. 31 at 3). He is projected to be released from the RRC on January 21, 2021. (Dkt. 33 at 6).

The instant motion arises from the ongoing COVID-19 pandemic. The RRC currently has 1 active COVID-19 case among the client population,[1] no active cases among staff, and no reported deaths; 6 clients were previously infected and have recovered. *COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 4, 2021).[2, 3]

---

[1] This count includes both individuals housed at the RRC and individuals on home confinement under the RRC's supervision. *COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 4, 2021).

[2] The BOP website contains the following disclosure:
> These data are compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting. **Not all tests are conducted by and/or reported to BOP.** The number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once. The number of tests recorded per site reflects the number of persons at the specific facility who have been tested, whether at that site or at a prior facility.

*COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 4, 2021) (emphasis in original). The website further indicates there have been 7 COVID-19 tests conducted at Human Service Center, 0 are pending, and there has been a total of 7 positive tests. *Id.*

[3] Defendant reports he knows of 20 people at the RRC who have tested positive for COVID-19, one of whom died. Defendant argues his report "should not be discounted," as "[t]he true number of infections is almost certainly higher than documented and cause of death has not always been accurately reported by BOP." (Dkt. 32 at 3; *see also* Dkt. 32-1, 32-2).

3

Defendant, 31, is concerned about contracting COVID-19 in the RRC. (Dkt. 30 at 1). According to his counsel, Defendant is still recovering from COVID-19,[4] and living in "close quarters with men who are not quarantined and are allowed to leave the premises to work place him at higher risk of contracting COVID-19 again." (Dkt. 32 at 3–4). If released, Defendant proposes residing with his girlfriend, a placement Probation finds suitable. (Dkt. 31 at 4).

## LEGAL STANDARD

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to ask the sentencing court for compassionate release. Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5239. The decision whether to grant compassionate release is within a district judge's discretion, the standard for which is set by § 3582(c)(1)(A). *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Under the statute, there are three requirements.

First, a defendant may not bring a compassionate release motion until either (a) the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (b) 30 days lapse "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). Some courts have held this requirement may be waived, *e.g., United States v. Coles*, 455 F. Supp. 3d 419, 424–425 (E.D. Mich. 2020), while others have held it may not, *e.g., United States v. Albertson*, No. 116-CR-00250,

---

[4] Neither of Defendant's filings provide any details about the circumstances or date of Defendant's alleged previous COVID-19 infection.

4

2020 WL 1815853, at *2 (S.D. Ind. Apr. 8, 2020). The undersigned has yet to decide that question.

Second, the defendant must either be at least 70 years of age and have served 30 years of the sentence for which the defendant is currently imprisoned, § 3582(c)(1)(A)(ii), or demonstrate "extraordinary and compelling reasons warrant" compassionate release, § 3582(c)(1)(A)(i). The policy statement issued by the United States Sentencing Commission, U.S.S.G. § 1B1.13, though not currently binding on district judges, provides a "working definition of 'extraordinary and compelling reasons'" that can "guide [judicial] discretion without being conclusive." *Gunn*, 980 F.3d at 1180.

Third, the Court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A).

## DISCUSSION

Defendant urges the Court to find that he satisfied the exhaustion requirement by submitting a request for release to his Probation Officer on November 9, 2020. (Dkt. 32 at 6–7; Dkt. 31 at 3). The Government argues Defendant was required to make a request to the Bureau of Prisons. (Dkt. 33 at 11).

Regardless of whether Defendant is statutorily eligible for relief, however, the Court denies compassionate release on the merits. Defendant has failed to present extraordinary and compelling reasons, and the § 3553(a) factors militate against release.

## I. Extraordinary and Compelling Reasons

The Court has previously accepted the proposition that extraordinary and compelling reasons exist where a prisoner suffers from a chronic condition from which he or she is not expected to recover and which places the prisoner at a heightened risk for severe illness or death from COVID-19. *See United States v. Hamilton*, No. 4:08-cr-40006, Dkt. 160 at 4 (C.D. Ill. Sept. 1, 2020); U.S.S.G. § 1B1.13 cmt. n.1(A). Defendant does not argue he has such an underlying condition. Instead, he cites general concerns about the RRC's quarantine policies and practices and states that if he were to contract COVID-19, it could be worse than his initial infection from which he is still recovering. (Dkt. 30 at 1; Dkt. 32 at 3–4). Ironically, Defendant himself flouted one of the RRC's policies designed to reduce the spread of COVID-19; on November 26, 2020, Defendant refused to comply with the RRC's policy forbidding families from dropping off food or snacks, taking food from his girlfriend at the facility and verbally assaulting staff who informed him it was not permitted. (Dkt. 31 at 3; Dkt. 33 at 15). And according to the Centers for Disease Control and Prevention, cases of COVID-19 re-infection have been reported but remain rare. Ctrs. for Disease Control and Prevention, *Reinfection with COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited Jan. 5, 2021, 2:25 PM). On the current record, Defendant has not presented extraordinary and compelling reasons for release.

## II. The 18 U.S.C. § 3553(a) Factors

Even if Defendant had presented extraordinary and compelling reasons, the § 3553(a) factors weigh against release. Defendant has repeatedly and seriously

6

violated the terms of his supervised release, and Defendant is currently residing at the RRC as an agreed-to sanction for his non-compliance. (Dkt. 31 at 4). Defendant also committed domestic battery against his previous two girlfriends with whom he resided; when he was arrested for Domestic Battery on August 26, 2020, his ex-girlfriend had scratches on her left cheek, a cut on the inside of her lip, and blood on the front and back of her dress. (Dkt. 31 at 4, 2). Defendant's Probation Officer recommended Defendant reside at the RRC for 120 days to be held accountable for his actions and to provide him structured time to obtain employment and his GED, and Defendant agreed to this sanction knowing we were in the midst of the ongoing pandemic. (Dkt. 31 at 2–3). Defendant has not yet obtained his GED nor paid his special assessment. (Dkt. 31 at 4).

In light of Defendant's history of recidivism, the need for this sanction to ensure the public is protected from further crimes, and the goal of ensuring Defendant has a structured environment in which to obtain educational training and vocational experience, the § 3553(a) factors weigh heavily against release. Defendant agreed to reside at the RRC for 120 days, until January 21, 2020, and the Court declines to grant him early release from the facility, which Defendant states despite his concerns has "helped [him] a lot in different ways." (Dkt. 30 at 1).

## CONCLUSION

For the foregoing reasons, Defendant's request for compassionate release (dkt. 30) and his counseled Amended Motion for Compassionate Release (dkt. 32) are DENIED.

SO ORDERED.

Entered this 6th day of January 2021.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
